UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY BOWEN,

                    Petitioner,

      -against-

WILLIAM E. PHILLIPS, Superintendent of
Green Haven Correctional Facility,

                 Respondent.

05 Civ. 6706 (RJH)(DFE)

**MEMORANDUM OPINION
AND ORDER**

Petitioner Gary Bowen ("Petitioner")[1] brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his March 15, 2001 conviction in New York County Supreme Court for murder in the second degree (two counts), attempted murder in the second degree, assault in the first degree, criminal use of a weapon in the first degree, criminal possession of a weapon in the second degree, and reckless endangerment. On November 13, 2007, Magistrate Judge Douglas F. Eaton issued a Report and Recommendation ("Report") recommending that the petition be dismissed.[2] Timely objections were filed by petitioner's appellate counsel and by petitioner *pro se*. Having reviewed the Report, the objections, and the record, the Court adopts the Report and denies the petition for the reasons given below.

---

[1] Petitioner is also known as "Relly" Bowen.

[2] The relevant facts are set forth in detail in the Report, familiarity with which is assumed.

# I.     Background

## A.     Procedural and Factual Background

Petitioner and his co-defendant Tyreek Page ("Page") headed a group of cocaine dealers operating in New York City.  On April 29, 1999, William Magwood ("Magwood"), the head of a rival group of drug dealers, robbed Petitioner's "drug spot" with the aid of Lefone Bangs ("Bangs").  On May 2, 1999, Petitioner and Page came upon Magwood and several others smoking marijuana on the steps of 360 West 127th Street and a gun battle ensued.  Magwood and a bystander, Clarence "C.J." Sims, were shot.  Sims died at Harlem Hospital a short time later.  Page was swiftly apprehended and Petitioner was arrested in Harrisburg, Pennsylvania on August 17, 1999.

Before trial, both Petitioner and Page argued unsuccessfully before Justice Michael Obus that they were entitled to separate trials.  A trial was then held by Justice Ronald Zwiebel.  At trial, the evidence against Petitioner included the testimony of twenty witnesses including Magwood and Elvio Lauria ("Lauria"), both eyewitnesses to the shooting.  Petitioner did not offer any testimony in his defense.  (Report 4–5.)  Both Magwood and Lauria testified (1) that Petitioner was a drug dealer, and (2) that the shooting was, at least in part, revenge for the earlier robbery of Petitioner's "drug spot." (*Id.* at 4–5, 15–16.)

During the direct examination of Detective Gisele Moyano, the prosecution introduced into evidence a redacted statement made by Page shortly after his arrest, in which he admitted that he was present at the shooting and that the shooting was a response to the robbery of Petitioner's "spot," but denied taking part in the killing.  (*Id.* at 5, 12.)  By agreement of the parties, Page's statement had been redacted to remove any

incriminating references to Petitioner.[3]  Justice Zwiebel instructed the jury to consider a

defendant's statement only as evidence against the defendant who made the statement.

(*Id.* at 18.)

The primary arguments asserted in the instant petition relate to three references to

Page's statement during trial, which Petitioner alleges violated his Sixth Amendment

right to confrontation.  First, Detective Moyano's testimony that Page, in his statement,

had "indicated that someone got robbed."  (*Id.* at 13–15.)  Second, the prosecution's

statement during summation that Page's statement corroborated the testimony of the

eyewitnesses and that Page had admitted his "motive for the shooting."  (*Id.* at 16–17.)

Third, Justice Zwiebel's disclosure to the jury that Page's statement had been redacted.

(*Id.* at 18–19.)

Petitioner also objects to allegedly improper communications between a court

officer and the jury.  Briefly, at the end of jury deliberations one day, the jury objected to

turning over to the court officer a partially completed verdict form.  (*Id.* at 24–25.)  When

the officer entered the jury room, he found that the verdict form had been torn into pieces

and thrown away.  (*Id.*)  The form was recovered from the garbage can, sealed in an

envelope, and preserved as a court exhibit.  (*Id.*)  When questioned by the court, the jury

claimed the court officer had instructed them to tear up the form; the officer denied doing

so.  (*Id.*)  Petitioner moved for a mistrial based on the communications between the

officer and the jury.  (*Id.* at 25.)  Justice Zwiebel denied the motion and allowed the jury

---

[3]  In Page's unredacted statement, Page said "Relly's spot got robbed."  (Report 11.)  Because the
reference to "Relly's spot" incriminated Petitioner, the parties agreed to a redacted version in which Page
said "someone got robbed."  (*Id.* at 11.)

to continue deliberations.  (*Id.*)  Later that day, the jury returned guilty verdicts against Petitioner on all counts.  (*Id.* at 26.)

Petitioner appealed his conviction to the Appellate Division, First Department. The appeal was denied.  The New York Court of Appeals denied further review on December 30, 2003,[4] and Petitioner's conviction became final on March 29, 2004. Petitioner timely filed the instant petition on July 13, 2005.

The Report divides the claims raised in the petition into four broad categories: (1) that the trial court violated Petitioner's Sixth Amendment right to confrontation by failing to effectively redact and/or exclude those portions of Page's statements that inculpated Petitioner, (2) that the trial court erred by refusing to sever the trials of Petitioner and his co-defendant Page, (3) that the court officer's allegedly improper instructions to the jury denied Petitioner his Constitutional right to judicial supervision of the jury, and (4) that he was impermissibly charged with both intentional murder and murder based on depraved indifference.  (*Id.* at 1–2.)[5]

The Report concluded that the state court's rulings with respect to Page's statement were not "contrary to, or . . . an unreasonable application of, federal law," and that, in any event, Petitioner's Confrontation Clause claims concerned only "minor aspects of his trial," and therefore any error would have been harmless.  (*Id.* at 21–22

---

[4]  Petitioner also sought a writ of error *coram nobis*.  (Resp't App. Ex. I.)  The First Department denied this petition and the Court of Appeals declined review of the denial.  (*Id.* Exs. L, M.)

[5]  Petitioner also argued in his petition that his sentence on all counts should be modified to run concurrently with each other, due to the "illegality" of his conviction on the remaining counts, namely attempted murder, assault, criminal use of a firearm, and criminal possession of a weapon.  (Pet. 22.)  As noted in the Report (*see* Report 2, 27), this argument raises only questions of New York law which are not properly raised in a petition for habeas corpus.  *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("'[F]ederal habeas corpus relief does not lie for errors of state law.'" (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990))).

(citations omitted).)  The Report further found that Petitioner was not entitled to a separate trial (*id.* at 23–24), that the Appellate Division's decision regarding the court officer's alleged communications with the jury raised only state law questions that are not reviewable in a federal habeas petition (*id.* at 24–26), and that Petitioner's conviction on theories of both intentional murder and depraved indifference was permitted under New York state law and did not violate due process (*id.* at 26–27).  Therefore, the Report recommended that the petition be dismissed.  (*Id.* at 27.)

### B.  Petitioner's Objections

Petitioner raises four objections to the Report's conclusion that no Confrontation Clause violation occurred during the trial.[6]  First, Petitioner objects to the finding that Detective Moyano's testimony that Page had "indicated about the person that got robbed" did not impermissibly convey to the jury that Petitioner was the person who was robbed. (Objections 2–3).  Second, Petitioner objects to the finding that the prosecution's summation, which characterized Page's statement as an admission regarding motive, did not inculpate Petitioner in violation of his right to confrontation.  (*Id.* at 3.)  Third, Petitioner objects to the finding that informing the jury that Page's statement contained redactions did not "make clear to the jury precisely what had been redacted."  (*Id.* at 4–5.)  Fourth, Petitioner objects to the finding that any violations that may have occurred constituted harmless error.  (*Id.*)

---

[6]  Petitioner timely filed two sets of objections, one through counsel and a second *pro se*.  The Court has considered both sets of objections in its review of the Report.  Citations to "Objections" refer to the objections submitted by counsel.  Citations to "Pro Se Objections" refer to the objections submitted by Petitioner *pro se*.

Petitioner has also submitted *pro se* objections in which he challenges the Report's findings on his Confrontation Clause claims, the denial of his motion for separate trials, and the alleged inconsistency of his convictions. (Pro Se Objections 1–8.)

## II.     STANDARDS OF REVIEW

### A.     Review of Magistrate Judge's Report and Recommendation

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where timely objections are made, the court is required to "make a *de novo* determination of those portions of a report . . . to which objection is made." *Id*. If no timely objection has been made to a portion of the report, "a district court need only satisfy itself that there is no clear error on the face of the record." *Wilds v. UPS, Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003). However, where a party only raises general objections, or objections that are "merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers]," such that *de novo* review would "reduce the magistrate's work to something akin to a meaningless dress rehearsal," the court need only review the report for clear error. *Singh v. U.S. Sec. Assocs., Inc.*, No. 1:05 Civ. 5333 (DAB), 2008 WL 2324110, at *1 (S.D.N.Y. June 4, 2008) (internal quotation marks omitted).

The standard of review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, as codified in 28 U.S.C. § 2254(d). Under AEDPA, a habeas petition challenging a state court conviction may not be granted unless the state court acted in a way that was "contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court of the United States" or that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). "Clearly established federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412 (2000).

Under AEDPA, factual determinations made by State courts are "presumed to be correct," and a habeas petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (holding that the standard for rebutting the presumption of correctness is "demanding but not insatiable" (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003))).

### B. Standards for Redaction of a Co-Defendant's Confession

Under the Confrontation Clause of the Sixth Amendment, a criminal defendant has the right "to be confronted with the witnesses against him." U.S. Const. Amend. VI. In *Bruton v. United States*, the Supreme Court interpreted this right to prohibit the introduction of a defendant's confession that tends to incriminate a co-defendant when the party incriminated by the statement cannot cross-examine the declarant. 391 U.S. 123, 125 (1968). The Court further held that the resulting violation of a defendant's right to confrontation cannot ordinarily be cured by an instruction directing the jury to consider the confession only as evidence against the declarant. *Id.* at 132.

However, under *Richardson v. Marsh*, if the incriminating statement is redacted to remove any reference to the co-defendant it would otherwise incriminate, it may be admitted at a joint trial if a proper limiting instruction is given. 481 U.S. 200, 208 (1987). The Second Circuit has held that redactions in which the name of the incriminated co-defendant is replaced with a neutral word or pronoun do not violate a defendant's *Bruton* rights even if other evidence suggests that the declarant was actually referring to that co-defendant. *United States v. Harris*, 167 Fed. Appx. 856, 859 (2d Cir. 2006). Furthermore,

> the appropriate analysis to be used when applying the *Bruton* rule requires that we view the redacted confession in isolation from the other evidence introduced at trial. If the confession, when so viewed, does not incriminate the defendant, then it may be admitted with a proper limiting instruction even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the defendant.

*United States v. Williams*, 936 F.2d 698, 700 (2d Cir. 1991) (citations omitted).[7]

The Supreme Court has cautioned, however, that a redaction of a confession or other statement that leaves an "obvious blank space . . . or other obvious indication of alteration," leaves the statement "similar enough to Bruton's unredacted confessions [to be objectionable]." *Gray v. Maryland*, 523 U.S. 185, 192, 195 (1998) (citing as examples "redactions that replace a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted."). *Gray* applies when a statement has been *ineffectively* redacted, 523 U.S. at 195–96, and does not alter *Richardson*'s holding that if a proper limiting instruction is given, the Confrontation

---

[7]  This rationale for this rule is the proposition that juries are more capable of following instructions not to make impermissible inferences based on "evidence requiring linkage" than on facially incriminating material. *Richardson*, 481 U.S. at 211. The Court in *Richardson* also remarked that it would be unmanageable to enforce a rule in which the admissibility of a confession turned on evidence that would be presented after the confession had been presented to the jury. *Id.* at 209.

Clause is not violated if a properly redacted statementbecomes incriminating in light of evidence later admitted.  *Richardson*, 481 U.S. at 208–09.

Therefore, under existing Supreme Court precedent, the confession of a non-testifying co-defendant can be admitted in a joint trial if it is redacted to remove material that facially incriminates another defendant in a way that does not indicate or suggest the material that has been removed.  *Id.*  If this standard has been satisfied, there is no Confrontation Clause violation merely because other evidence is introduced from which the jury could infer that the unredacted statement implicated another defendant.  *See Id.*

### C.    Harmless Error

Even when a Confrontation Clause violation has occurred, a habeas corpus petition cannot be granted if the error was harmless.  *See, e.g., Fuller v. Gorczyk*, 273 F.3d 212, 220 (2d Cir. 2001); *Mingo v. Artuz*, 174 F.3d 73, 78 (2d Cir. 1999).  On habeas review, the prosecution bears the burden of persuasion on the issue of harmless error.  *Fry v. Pliler*, 127 S. Ct. 2321, 2328 n.3 (2007).  A state court's error is considered harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abramson*, 507 U.S. 619, 631 (1993); *see also Fry*, 127 S. Ct. at 2325, 2328 ("[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*.").

Federal courts commonly hold alleged Confrontation Clause violations to be harmless error when the evidence against the petitioner at trial was substantial and/or the improperly admitted testimony was cumulative of other admissible evidence.  *See, e.g.,*

*Ruiz v. Kuhlmann*, 80 Fed. Appx. 690, 694 (2d Cir. 2003) (affirming denial of habeas petition despite *Bruton* violation in light of "compelling" testimony of two eyewitnesses identifying petitioner as the shooter); *United States v. Vasquez*, 225 Fed. Appx. 831, 835 (11th Cir. 2007) ("'[E]rroneous admission of evidence does not warrant reversal if the error had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict.'" (quoting *United States v. Harriston*, 329 F.3d 779, 789 (11th Cir. 2003))); *United States v. Coleman*, 349 F.3d 1077, 1086 (8th Cir. 2003) ("Thus, there is no *Bruton* error when the erroneously admitted evidence is 'merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury.'" (quoting *Brown v. United States*, 411 U.S. 223, 231 (1973))).

## III.     Analysis

### A.     Direct Examination of Detective Moyano

Petitioner claims that Detective Moyano's introduction of Page's post-arrest statement at trial "facially incriminated" petitioner because Moyano answered "yes" when asked "[a]nd did he indicate about the person that got robbed?"[8]  (Objections 2; Report 13.)  The trial court and Appellate Division found that this response did not constitute a Confrontation Clause violation, and the Report found that these findings were reasonable under clearly established federal law.  (Report 15.)

---

[8]   Petitioner misquotes the language of the exchange.  While Petitioner contends that Moyano testified that Page had "indicate[d] the person that got robbed" (Objections 2), the trial transcript shows that Moyano actually testified that Page "indicate[d] *about* the person that got robbed"  (Tr. 1355 (emphasis added).)  Contrary to Petitioner's assertion, the actual colloquy does not suggest that Page stated that a specific, identified person had been robbed.

The Court has reviewed this issue *de novo* and agrees with the Report that Petitioner has failed to meet his burden of demonstrating that the state court's rulings were "contrary to, or . . . an unreasonable application of, clearly established Federal law." (*Id.* at 22.)  This colloquy did not, as Petitioner contends, "put [Petitioner's] name" into Page's statement.  (*Id.* at 13–15 (quoting Tr. 1355).)  While Detective Moyano's response may be susceptible of Petitioner's interpretation, it would be at least as reasonable to interpret the testimony to mean that Page "indicated" that he did not know who was robbed.  (*Id.* at 14–15.)  This latter interpretation would be especially likely in light of the next sentence of Page's statement, which Detective Moyano began to read:  "at this time, nobody knew who robbed someone."  (*Id.*)

The Court agrees with the Report that Detective Moyano's testimony was faithful in substance to Page's properly redacted statement, which the parties agreed did not incriminate Petitioner.  Therefore, Justice Zwiebel was not unreasonable in holding that this testimony did not violate Petitioner's right to confrontation.  The difference between Page's redacted statement and Moyano's characterization of the statement on the stand was, as the prosecution argued at trial, a "distinction without a difference."  (*Id.* at 15 (quoting Tr. 1358).)

## B.     The Prosecution's Summation

Petitioner objects to the finding in the Report that his Confrontation Clause rights under *Bruton* were not violated by the prosecution's summation.  (Objections 3–4.)  In summation, the prosecution argued that Page had admitted to the motive for the shooting in his post-arrest statement.  (Tr. 1956.)  Petitioner contends this comment impermissibly

implied to the jury that Page was referring to *Petitioner's* "drug spot" when he said "somebody got robbed." (*Id.*; Report 16–18.) Petitioner argues that the introduction of Page's motive "could not rationally be interpreted as anything other than a reference to the motive that appellant allegedly shared with Page." (Objections 3–4.) The Court reviews *de novo* the state court's finding regarding the prosecution's summation and concludes that it was correct.

The prosecution may commit a *Bruton* violation during summation by encouraging a jury to interpret redacted portions of a non-testifying defendant's statement in a way that implicates a co-defendant. *See, e.g., Ruiz*, 80 Fed. Appx. at 693, *Ruiz v. Kuhlmann*, No. 97-CV-6620, 2001 WL 579788, at *3 (E.D.N.Y. May 30, 2001) (finding that there was "plainly a *Bruton* error" where prosecutor stated during summation, "I submit that it was [petitioner] . . . I submit they went to pick up [petitioner].").  The Court finds that the prosecution's statement during summation that Page had "admit[ted] to the motive for the shooting" did not implicate Petitioner or undo the redaction of the statement.

To the extent Page's statement reveals a motive for the shooting, it was unrelated to Petitioner.  In the relevant portions of Page's redacted statement, he reports learning that "someone" in the neighborhood had been robbed by persons known as Lee Bangs and Roy [Magwood], that he later heard a rumor that Bangs intended to rob Page as well, and that he set out to find Bangs and confront him about this rumor.  (Resp't App. Ex. R.) Page's statement does not suggest that Page was acting out of revenge for the robbery of Petitioner or anyone else.  (*Id.*)

Page's statement could only be interpreted to refer to a motive that also implicates Bowen if the statement were linked with other evidence, for example testimony by Lauria that Page sold drugs for Bowen, that Bangs and Magwood had robbed Bowen, that Bowen wanted Magwood killed, and that he had seen Page and Bowen walk up 127th Street with guns on the night of the shooting.  (Report 4.)  However, as noted, juries are presumed to follow a court's instruction not to consider a properly redacted statement against a defendant, even if such a linkage is obvious based on other admitted evidence. *Richardson*, 481 U.S. at 208–09; *Williams*, 936 F.2d at 701 (holding that jury was presumed to follow limiting instruction even though the evidence at trial "all but insured that a jury *could* identify the person referred to in [the declarant's] confession as [the defendant]").  To the extent the jury concluded that Page had a motive to seek revenge for the robbery of Petitioner, they could have and are presumed to have done so without making this improper linkage.

Furthermore, the prosecution did not clearly articulate a single theory of Page's motive for the shooting during summation.  The prosecutor noted that Page worked for Petitioner (Tr. 1975), that the defendants "wanted to send a message to" Magwood (Tr. 1944), that "in the drug business, you are supposed to respect each other's territory" (Tr. 1965), and that the defendants "act[ed] in concert" with a "shared . . . intent" to kill Magwood (Tr. 1975), but never specifically argued that Page's participation in the shooting was motivated by revenge, rather than the threat posed to Page by Bangs and/or Magwood.  Notably, however, the prosecutor suggested that Page's statement was true to the extent it admitted a motive for the shooting.  (Tr. 1956.)

In context, the prosecutor's reference during summation to Page's admission regarding motive is most reasonably interpreted as referring to Page's motive to respond to the threat from Bangs and/or protect his own interests, not to retaliate for the robbery of Petitioner. In denying Petitioner's motion for a mistrial, the trial court appears to have accepted the prosecution's explanation that the reference to motive was a reference to "what is left in the [redacted] statement"—"a robbery" (Tr. 2002), and, therefore, that the jury was therefore not asked to infer that Page's statement made reference to Bowen. This was not an "unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

### C.     Jury Charges

Petitioner objects to the finding in the Report that Justice Zwiebel's disclosure to the jury that Page's statement had been redacted did not violate *Bruton*. The Court therefore reviews this finding *de novo*. Justice Zwiebel's statement to the jury did not specify how or where Page's statement was changed (except to indicate that the signature had been moved) or the purpose of the redaction. (Report 18.) Neither *Gray* nor any other Supreme Court precedent prohibits a court from informing a jury of the fact that a defendant's statement has been redacted. *See Gray*, 523 U.S. at 195 (stating that redactions like "an obvious blank, the word 'delete,' [or] a symbol," violate the Confrontation Clause because such redactions "notify the jury that *a name* has been deleted" (emphasis added)). Therefore, the Court agrees with the Report that it was not "contrary to, or . . . an unreasonable application of, clearly established Federal law" to permit the jury to be informed that Page's statement had been redacted. *See* 28 U.S.C. § 2254(d).

### D.     Harmless Error

Petitioner finally objects to the finding in the Report that, if the trial court erred, such error did not have a "substantial and injurious effect" on the verdict and was therefore harmless. (Objections 5.) The Court reviews this finding *de novo* and concludes that the any error was harmless given the overwhelming nature of the evidence against Petitioner and the fact that any incriminating inferences that might have been drawn from Page's statement were merely cumulative of other admissible evidence establishing these same facts.[9] (*See* Report 21–23.)

In the case at bar, the respondent has demonstrated that any alleged *Bruton* violation had no 'substantial and injurious effect' on the jury's verdict, and therefore constituted harmless error. *See Fry*, 127 S. Ct at 2328 & n.3. The Appellate Division found that any violation of Petitioner's right of confrontation was harmless error because "the fact that [Petitioner's] drug location had been robbed . . . was fully established through other properly admitted evidence, and also because the evidence of [Petitioner's] guilt was overwhelming in general." *People v. Bowen*, 765 N.Y.S. 2d at 614. The People offered the testimony of twenty witnesses, at least three of whom were eyewitnesses to the shooting, including one who testified that he saw Bowen receive a pistol from another individual, fire the pistol at the victims, and run away from the scene with a pistol in his hand. (Tr. 1184, 1190–92.) Having reviewed relevant portions of the

---

[9]   The Report also suggests that a finding of harmless error is supported by the fact that a torn verdict form recovered from the jury room indicated that the jury had reached a "preliminary" verdict against Petitioner on all counts even before they viewed Page's statement. (Report 22–23.) Petitioner objected to this aspect of the Report. (Objections 5.) The Court has not relied on this verdict form in its review and expresses no opinion regarding whether a court might properly consider the content of an unsigned, non-final jury verdict form to determine whether challenged evidence impacted the jury's deliberations.

trial transcript, the Court agrees that the evidence of Bowen's guilt was overwhelming at trial, and determines that, even if a *Bruton* violation occurred, such violation did not have a "substantial and injurious effect" on the verdict. *See Fuller*, 273 F.3d at 220; *Fry*, 127 S. Ct. at 2325, 2328. This finding alone would require denial of all of Petitioner's Sixth Amendment claims in the instant petition.[10]

### E.  Issues Raised in Petitioner's *Pro Se* Objections

The objections submitted by Petitioner *pro se* advance no arguments regarding his *Bruton* claims that were not also raised in the objections submitted by counsel. The Court has already addressed and rejected each of these after *de novo* review.

The *pro se* objections challenge the Report's finding regarding the denial of his request for separate trials. (*See, e.g.,* Pro Se Objections ¶ 2.) The Court reviews this issue *de novo* and finds that is was not an incorrect or unreasonable application of clearly established federal law for the state court to deny this request. *See Zafiro*, 506 U.S. at 539–40 (holding that defendants were not entitled to separate trials if less drastic measures would suffice to avoid prejudice).

Finally, the *pro se* objections challenge the presentation to the jury of both intentional and depraved indifference murder charges in the conjunctive rather than the alternative, and the subsequent conviction on both charges. (*See, e.g.,* Pro Se Objections ¶¶ 6–12.) The Court reviews this issue *de novo* and rejects this claim.

---

[10]   With respect to Petitioner's claim that a *Bruton* violation occurred during summation when the prosecution stated that Page had admitted the motive for the killing, the Court also notes that during Petitioner's summation, Petitioner's counsel acknowledged this very motive for the shooting, reminding the jury that "everyone sitting on that stoop [where the shooting occurred] knows that Gary Bowen is allegedly out to kill Roy Magwood. His drug spot has been robbed, and he's out to revenge that killing. He is a big time drug dealer, he is out to revenge that killing and he is out to kill Roy Magwood." (Tr. 1873.)

The Court interprets Petitioner's various arguments regarding his allegedly inconsistent charges as a due process claim—that Petitioner's conviction on either the intentional murder or depraved-indifference charge was not based on proof beyond a reasonable doubt because the required mental states for the crimes are mutually exclusive. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979) (holding that due process requires the prosecution to introduce evidence to prove all facts necessary for conviction beyond reasonable doubt). When challenging a state conviction pursuant to 28 U.S.C. § 2254, a petitioner will be "entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324.

A federal court reviewing the sufficiency of evidence "must look to state law to determine the elements of the crime," *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (citation omitted), and consider whether "there was sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law." *Einaugler v. Supreme Court of State of N.Y.*, 109 F.3d 836, 839 (2d Cir. 1997) (citations omitted); *see also Monserrate v. Greiner*, No. 1:00-Civ-4785(SHS)(GWG), 2001 WL 812151, at *10–*13 (S.D.N.Y. July 19, 2001) (rejecting due process claim because, *inter alia*, evidence could support both charge of intentional murder and charge of depraved indifference murder). In doing so, the evidence must be viewed in the light most favorable to the prosecution and all permissible inferences must be construed in its favor. *See, e.g., United States v. Strauss,* 999 F.2d 692, 696 (2d Cir. 1993).

Under New York law, second-degree murder can be demonstrated either by proof that "[w]ith intent to cause the death of another person, [defendant] causes the death of such person or of a third person," N.Y. Penal Law § 125.25(1), or "[u]nder circumstances evincing a depraved indifference to human life, [defendant] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." *Id.* § 125.25(2). Petitioner was charged with and convicted of both intentional and depraved-indifference murder and the jury was not instructed to consider these charges only in the alternative. (Report 26–27.) Petitioner argues, essentially, that intent and depraved indifference are mutually exclusive mental states and that proof of both states was therefore necessarily insufficient with respect to one of them. (*See, e.g.,* Pro Se Objections ¶¶ 6–12.) Under New York law, "[a] finding that defendant committed intentional murder by killing his victim with the conscious objective of causing his death precludes the inconsistent finding that defendant at the same time committed depraved mind murder by recklessly and thus unintentionally killing that same victim under circumstances evincing a depraved indifference to human life." *People v. Gallagher*, 69 N.Y.2d 525, 529–30 (N.Y. 1987); *see also People v. Trappier*, 87 N.Y.2d 55, 58 (N.Y. 1995) ("[A] defendant who acts with the conscious objective of bringing about a particular result cannot simultaneously act with conscious disregard of a substantial and unjustifiable risk that the very result will occur.").

However, this does not preclude the submission of both intentional and depraved indifference charges to the jury in the conjunctive when a "defendant fired his gun at one person with the intent to kill him and also recklessly engaged in conduct that created a grave risk of death to the [bystander] decedent." *People v. Mills*, 214 A.D.2d 423, 424

(N.Y. App. Div. 1995); *see also People v. Campbell*, 208 A.D.2d 641 (N.Y. App. Div. 1994) ("A reasonable view of the evidence would permit a jury to find that when the defendant fired his handgun at Gunter with the intent to kill him he also recklessly engaged in conduct that created a grave risk of death to Stanley."); *People v. Monserrate*, 256 A.D.2d 15, 15–16 (N.Y. App. Div. 1998) ("The trial court properly submitted to the jury the counts of intentional murder and depraved indifference in the conjunctive . . . since more than one *mens rea* could have existed simultaneously" where "defendant acted intentionally as to his intended victim, causing the death of the bystander victim with transferred intent,[11] and defendant also acted with depraved indifference as to the people in the street, including the bystander victim.").[12] While the Court of Appeals has rejected the "proliferation of the use of depraved indifference murder as a fallback theory under which to charge intentional killers," *People v. Suarez*, 6 N.Y.3d 202, 207 (N.Y. 2005),[13] it has not called into question the practice of charging both intentional and depraved-indifference murder when the evidence indicates that the defendant intended to kill one person but recklessly killed another. *See also Trappier*, 87

---

[11]   Under New York law, the doctrine of "transferred intent" allows a defendant to be found guilty of intentional murder when he intends to kill one victim, but kills someone else; the justification is that "such a defendant is no less culpable than a murderer whose aim is good." *People v. Fernandez*, 88 N.Y.2d 777, 781 (N.Y. 1996) (citation omitted); N.Y. Penal Law § 125.25(1) ("A person is guilty of murder in the second degree when . . . with intent to cause the death of another person, he causes the death of such person or a third person.").

[12]   The New York Court of Appeals denied leave to appeal in all of these cases. *See People v. Campbell*, 84 N.Y.2d 1029 (N.Y. 1995); *People v. Mills*, 86 N.Y.2d 844 (N.Y. 1995); *People v. Monserrate*, 93 N.Y.2d 855 (N.Y. 1999).

[13]   The Court of Appeals declined to review the Appellate Division's denial of Petitioner's application for a writ of error *coram nobis*, in which Petitioner explicitly argued that New York law prohibited charging intentional and depraved-indifference murder conjunctively under the facts of his case.  (*See* Resp't App. Ex. I at 14–15, Exs. L, M.)  The issue was extensively briefed by both parties at that time.  (*Id.* Ex. I at 14–15, Ex. J at 10–11, Ex. K at 3–6).  Unlike in *Suarez*, decided only a few months after the Court of Appeals declined review of Petitioner's application, Petitioner had intent to kill one person, but, acting with depraved indifference, killed another.  *See Suarez*, 6 N.Y.3d at 205–06, 211–12 (holding depraved indifference charge was not appropriate where defendant intended to kill an individual and did kill that individual, even if the killing was done in a depraved manner.)

N.Y.2d at 58–59 (holding that guilty jury verdict against defendant for both attempted assault and reckless endangerment was not "repugnant" or "inconsistent" because the jury could permissibly find "that the defendant acted intentionally as to one result and recklessly as to a distinct, more serious result").

The relevant question is whether the necessary *mens rea* for both intentional and depraved-indifference murder "could have existed simultaneously." *Mills*, 214 A.D.2d. at 424 (citation omitted). New York law is clear that a defendant may "fire[] his gun at one person with the intent to kill him and also recklessly engage[] in conduct that created a grave risk of death" with respect to another. *Id.* The Court finds that sufficient evidence was presented at trial from which a jury could conclude beyond a reasonable doubt that Petitioner acted with the intent to kill Magwood while at the same time acting recklessly and with depraved indifference to human life with respect to the decedent Sims. *See Suarez*, 6 N.Y.3d at 214 (citing "firing into a crowd" as a "quintessential example[]" of depraved indifference to human life (citation omitted)).

### E. Issues to Which No Objection Has Been Made

The Court has reviewed the findings in the Report regarding issues to which no objections were submitted and finds no clear error.

### CONCLUSION

For the reasons stated above, the Court adopts the Report and denies the petition for a writ of habeas corpus. In addition, the Court declines to issue a certificate of

appealability.  The petitioner has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted.  *See Tankleff v. Senkowski*, 135 F.3d 235, 241 (2d Cir. 1998).  The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438, 445 (1962).  The Clerk of Court is directed to close this case.


SO ORDERED.

Dated: New York, New York
       August 26, 2008

                                        _____
                                              Richard J. Holwell
                                          United States District Judge

appealability. The petitioner has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. *See Tankleff v. Senkowski*, 135 F.3d 235, 241 (2d Cir. 1998). The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962). The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: New York, New York
August 26, 2008

Richard J. Holwell
United States District Judge

21